HOOD, Judge.
L. D. O’Liphant and his wife, Daisy O’Liphant, instituted this suit for damages allegedly sustained by them as the result of a motor vehicle accident in which Mrs. O’Liphant was injured. The sole defend *267 ant, Motor Vehicle Casualty Company, admitted liability, and the only issue presented at the trial related to quantum. The trial judge awarded $4500.00 as general damages, and $2594.80 as special damages. Judgment thus was rendered in favor of plaintiffs for the aggregate sum of $7094.-80. Defendant has appealed.
The sole issue presented here is whether the award made by the trial court should be reduced.
The accident occurred on July 17, 1970, in Natchitoches, Louisiana. While Daisy O’Liphant was riding as a passenger in an automobile being driven by her son, the automobile struck a log which had fallen or had been knocked from an approaching truck. The car was traveling at a speed of from five to eight miles per hour when it struck the log, and the only damage done to the automobile was a slight dent on the left side of the front bumper. The accident thus was a very minor one.
' Mrs. O’Liphant complained of pain in her neck and head immediately after the accident occurred. She testified that since that accident she has continued to suffer pain extending from the low back area to the top of her head, and pain in her left shoulder. She had been employed as a cook by the Natchitoches Parish School Board, but she worked only while the public schools were in session. The schools were not in session when this accident occurred, so she was not employed, at that time, although she expected to obtain the same type of employment beginning the following September. She stated that the pain which she suffered following the accident disabled her from working, so she did not apply for work the following fall.
Mrs. O’Liphant was 48 years of age when the accident occurred. She was somewhat obese, being five feet four inches tall and weighing 262 pounds. Prior to the accident she was afflicted with high blood pressure, an enlarged heart, hypertension’ and arthritis in the cervical and dorsal areas of her spine. She suffered an acute cervical sprain on February 27, 1969, about 16 or 17 months before this accident occurred. She received treatment for that injury for about three weeks, until March 20, 1969. Her treating physician testified that “her neck was still hurting” on the last mentioned date, but she apparently sought no additional medical treatment and she made no further complaints about her cervical spine injury from that date until the accident involved in this suit occurred. She testified that she completely recovered from her earlier neck injury before July, 1970.
She was treated by Dr. Archie Breazeale, a general practitioner, from the date of the accident until sometime in April, 1971. He apparently did not discharge her at that time, but instead she simply quit going to him for treatment. She also was treated by Dr. Charles Cook, a general practitioner, from February until September, 1971, and she has been under the treatment of Dr. Carson R. Reed, Jr., an orthopaedic surgeon, since September 29, 1971. Mrs. O’Liphant was examined by Dr. W. W. Fox, III, an orthopaedic surgeon, on October 29, 1970. She was seen by Dr. David T. Henry on two occasions, but Dr. Henry did not examine or treat her at any time, and he was unable to express an opinion as to the nature and extent of her injuries.
Plaintiff was confined to the hospital twice while being treated by Dr. Breazeale. She was hospitalized first from July 25 to August 19, 1970, a period of about 25 days. She was hospitalized again for seven days, beginning on October 27, 1970. On October 29, while in the hospital in Natchitoches, she was taken by ambulance from Natchi-toches to Shreveport to be examined by Dr. Fox. She was placed in cervical traction during a part of her first period of hospital confinement. A cervical collar was prescribed for her shortly after the accident occurred, and her treating physician advised that she wear it for about two weeks following her discharge from the hospital in August. She testified, however, that she wore that collar for about three months.
*268 Dr. Breazeale, plaintiff’s original treating physician, concluded that Mrs. O’Liph-ant sustained an “acute cervical sprain” as a result of the accident, and that her preexisting arthritis was aggravated by that trauma. He concedes that “it is unlikely that her accident has produced all of the symptoms that she complains of,” but he feels that at least some of the pain which she has suffered since the accident is related to the trauma which she experienced at that time. He stated that “My reason for her hospitalizations were related to her accident and residuals therefrom,” and that she was still complaining of pain in her head and neck when he last saw her in April, 1971.
The testimony of each of the other medical experts who treated or examined plaintiff tend to confirm the opinions expressed by Dr. Breazeale. Dr. Cook, for instance, found objective signs of injury while he was treating Mrs. O’Liphant, and he testified that “She had some definite neck pathology, and with the history that she gave me of having had trouble ever since the accident, the history correlates with the finding. I assumed that this was probably the cause of her neck bothering her.” He, like the other doctors who testified, felt that a part of her symptoms were due to other ailments, and he stated that he didn’t feel that at this time her neck injuries alone “would keep her from carrying on her normal activities.”
Dr. Reed stated that plaintiff “could have sprained her cervical spine and the lumbosacral joint and aggravated her arthritis of the thoracic spine at the time of her injury,” and that he related her present symptoms, at least insofar as her neck pain is concerned, to the accident which occurred on July 17, 1970, because she associated the onset of her pain with the occurrence of that accident.
Dr. Fox reported on October 29, 1970, that plaintiff “probably suffered a sprain of the cervical spine and also the dorsal spine. The sprains of the dorsal spine are superimposed on osteoarthritis. She also irritated the muscles of the scapulae which are usually fairly intimately connected with the cervical and dorsal spine. The left seems to be causing her more trouble. . . . . It is felt that this patient is not rehabilitating as fast as one might expect due to a basic personality defect which throws her easily into a dependent state.”
Defendant argues that plaintiff greatly exaggerated her symptoms, and that the principal cause of her present discomfort is her obesity, hypertension and arthritis, all of which existed before the accident and none of which was aggravated or made more symptomatic by the injury which she may have received in July, 1970. It is suggested that an award of $750.00 as general damages would be adequate.
Most of the doctors who testified felt that plaintiff had greatly exaggerated her symptoms. Dr. Fox stated that plaintiff is “pretty severely neurotic,” that he thinks “a lot of this will clear up after the litigation is settled,” and that he feels that “it is a sort of litigation neurosis, as well as a trauma neurosis.” The trial judge also observed that “Daisy seeks to magnify her injuries.” And we agree that plaintiff has greatly exaggerated her injuries.
Although the treating and examining doctors were aware of plaintiff’s exaggerations, they nevertheless found that she sustained an acute cervical sprain as a result of the accident, and that her pre-existing arthritic condition was aggravated by that trauma. The trial judge, who also was aware of the exaggerations, specifically noted in his written reasons for judgment that he “observed the plaintiff Daisy O’Liphant as a witness,” and after doing so he concluded that “the preponderance of the evidence is that Daisy suffered a whiplash type injury to her cervical spine,” and that this injury “was superimposed on a preexisting condition of osteoarthritis suffered by Daisy.”
The general rule is that findings of fact by the trial judge, particularly those involv *269 ing the credibility of witnesses testifying before him, are entitled to great weight on appeal, and his conclusions as to those facts will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App. 3 Cir. 1966); Elliott v. Wallace, 251 So.2d 831 (La.App. 3 Cir. 1971).
In the instant suit, despite the minor nature of the accident and plaintiff’s exaggerations of her symptoms, we cannot say that the trial judge erred in concluding that Mrs. O’Liphant sustained an acute cervical sprain as a result of the accident, and that this injury aggravated her preexisting arthritic condition.
The award of $4500.00 made by the trial court as general damages appears to us to be within the range of the discretion which is vested in it, and not being excessive nor inadequate, we thus will not disturb that award.
The special damages awarded by the trial court include $1665.30 as hospital expenses, $277.00 as doctor bills and $652.50 as loss of wages. Defendant argues that all of these awards are excessive, and that they should be reduced.
Dr. Breazeale, plaintiff’s treating physician, testified that Mrs. O’Liphant was hospitalized on both occasions for reasons relating to her accident and residuals therefrom. We agree with the trial judge that Mrs. O’Liphant is entitled to recover these hospital expenses.
The award of $277.00 represented the bill presented by Dr. Breazeale for medical treatment. The evidence shows that plaintiff was indebted to Dr. Breazeale for more than that amount for medical treatment administered on and after July 17, 1970. Plaintiff prayed for judgment for only $277.00, however, and the trial judge limited the award to the amount claimed. We affirm that part of the award.
Mrs. O’Liphant was not employed at the time the accident occurred. The trial judge apparently felt, however, that she would have been able to obtain employment during the months of September, October and November, 1970, if she had applied for work, and he allowed the wages which she would have earned during that three month period, basing the award on the amount of the monthly salary she had received during her last employment.
Plaintiff testified that she was required to take a physical examination when she applied for work as a cook for the School Board, and that she had intended to have such an examination made the day of the accident. She stated that “all of the rest of them had done went back, but I hadn’t went back yet.” We assume that she meant that all of the others who did that type of work had had physical examinations made but that she had not done so.
The evidence does not show that plaintiff could have obtained employment with the School Board if she had applied for a job. Defendant points out that it would have been relatively easy for her to have called someone from the School Board office to show that she could reasonably have expected to obtain employment. The record, however, contains no such proof. Plaintiff had many serious ailments, as we have already noted, and it requires some speculation in order to conclude that she could meet the physical requirements for the employment which she sought.
Our conclusion is that plaintiff has failed to prove her right to recover lost earnings. See Louis v. J. C. Penney Company, 246 So.2d 294 (La.App. 1 Cir. 1971); Berthelot v. Tally, 239 So.2d 721 (La.App. 1 Cir. 1970). The judgment appealed from will be amended, therefore, to delete the amount awarded as loss of wages.
For the reasons herein assigned, the judgment appealed from is amended by reducing the amount of the award from $7094.80 to the sum of $6442.30. In all *270 other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellees.
Amended and affirmed.